IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CR-91-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARTEZ OMAR FAULK, and, | ) | **ORDER** |
| ROSALIND CAROL COMFORT, | ) | |
| | ) | |
| Defendants. | ) | |

On September 25, 2025, a jury in the Eastern District of North Carolina found Dartez Omar Faulk ("Faulk") and Rosalind Carol Comfort ("Comfort," collectively "defendants") guilty of conspiring to sex traffic Victim-1 by force, fraud, or coercion (count one); sex trafficking Victim-1 by force, fraud, or coercion and aiding and abetting (count two); and using the internet to promote an unlawful business enterprise and aiding and abetting (count three) [D.E. 113, 122, 123]. On January 30, 2026, Comfort moved for a new trial or, alternatively, to dismiss the indictment based on alleged violations of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500 [D.E. 151] and filed an exhibit in support [D.E. 149]. On February 20, 2026, Faulk moved for a new trial or, alternatively, to dismiss the indictment on substantially the same grounds [D.E. 158]. On March 6, 2026, the government responded, recommended that the court order a new trial in the interest of justice, and opposed defendants' motions to dismiss the indictment [D.E. 160, 162]. On that day, the government also moved to seal docket entry 162 [D.E. 163]. As explained below, the court grants defendants' motions for a new trial in the interest of justice, denies defendants' request to dismiss the indictment, and grants the government's motion to seal.

## I.

On October 22, 2024, a grand jury in the Eastern District of North Carolina charged defendants with conspiracy to commit sex trafficking by force, fraud, or coercion; sex trafficking by force, fraud, or coercion and aiding and abetting; and using the internet to promote an unlawful business enterprise and aiding and abetting. See [D.E. 1]. On March 11, 2025, defendants pleaded not guilty to the charges in the indictment. See [D.E. 58, 59]. On September 22, 2025, defendants' trial began. See [D.E. 109]. On September 25, 2025, the jury found both defendants guilty on all counts. See [D.E. 113, 122, 123].

Victim-2, an uncharged victim of the alleged sex trafficking conspiracy, testified before the grand jury that she was not under the influence of any drugs during her grand jury testimony. See [D.E. 149] 17. On August 21, 2025, Victim-2 told investigators that, during the grand jury proceeding, she "lied when she was asked by the AUSA if she was under the influence of any substances." Id. Victim-2 told investigators that she was under the influence of crack cocaine. See id. The FBI memorialized Victim-2's statement in an FBI 302 document dated August 22, 2025. See id.

On September 23, 2025, Victim-2 testified during the government's case-in-chief. See [D.E. 131] 3–49. The Assistant United States Attorney ("AUSA") asked Victim-2 if she previously testified in this case and if she was under the influence of drugs during that prior testimony. See id. at 5. Victim-2 responded, "Yes, ma'am" to both questions. Id. Victim-2 testified that she was under the influence of meth and fentanyl during her grand jury testimony. See id.

The government did not disclose the FBI 302 document containing Victim-2's statement about her drug use during her grand jury testimony to defendants' counsel until November 5, 2025.

See [D.E. 151-2] 1. The government represents that it received the document on September 16, 2025, but the lead AUSA confused the email containing the document with another email and forwarded only the latter email for production to defendants' counsel. See [D.E. 162] 2. On November 4, 2025, the government realized the error. See id. On November 5, 2025, the government notified defendants' counsel of the error. See id. On January 30, 2026, Comfort moved for a new trial or, alternatively, to dismiss the indictment. See [D.E. 151]. On February 20, 2026, Faulk moved for a new trial or, alternatively, to dismiss the indictment. See [D.E. 158].

## II.

Defendants move for a new trial based on violations of the government's obligations under Brady and Giglio.[1] Specifically, defendants argue that the government suppressed evidence that (1) Victim-2 perjured herself before the grand jury; (2) Michael Weaver ("Weaver"), a government witness who testified about his solicitation of Victim-1 for prostitution, was under a federal investigation for child sexual abuse; and (3) Kelly Kucala ("Kucala"), the government's case agent, fabricated a statement attributed to Victim-1 in an FBI 302 document. See [D.E. 151] 7–21; [D.E. 158] 2 n.1, 5–8.

The court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Ordinarily, a new trial motion requires a court to consider five factors:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such,

---

[1] Defendant Comfort states that she made her argument about the Jencks Act for preservation purposes only and does not develop the argument in her motion. See [D.E. 151] 4. The court declines to address this undeveloped argument.

3

and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Sandoval, 154 F.4th 186, 199 (4th Cir. 2025); see, e.g., United States v. Banks, 104 F.4th 496, 509 (4th Cir. 2024); United States v. Moore, 709 F.3d 287, 292 (4th Cir. 2013); United States v. Robinson, 627 F.3d 941, 948 (4th Cir. 2010). "As a general matter, newly discovered evidence that is merely impeaching does not warrant a new trial." Sandoval, 154 F.4th at 199 (citation and quotations omitted); see Banks, 104 F.4th at 511.

When a Brady or Giglio violation forms the basis for a Rule 33 motion, "the proper legal standard is more favorable to the defendant." United States v. Cohn, 166 F. App'x 4, 12 (4th Cir. 2006) (per curiam) (unpublished); see Juniper v. Davis, 74 F.4th 196, 210 (4th Cir. 2023); United States v. Sutton, 542 F.2d 1239, 1242 n.3 (4th Cir. 1976). First, a new trial may be warranted even though the new evidence is merely impeaching. See United States v. Bagley, 473 U.S. 667, 676 (1985); Cohn, 166 F. App'x at 12. Second, the evidence only need be such that, on a new trial, its disclosure would result in a reasonable probability of a different result, which is "shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995) (citation and quotations omitted); see Cohn, 166 F. App'x at 12.

"Under Brady and Giglio, a defendant's due-process rights are violated when the prosecution suppresses evidence favorable to an accused or for impeachment purposes." Sandoval, 154 F.4th at 199 (citation and quotations omitted); see Brady, 373 U.S. at 87; Giglio, 405 U.S. at 153–54; Banks, 104 F.4th at 509. To prove a Brady violation, defendants must show three elements: "(1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government [possessed and] suppressed the evidence; and (3) that the evidence was material to the defense." United States v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011); see Moore v.

4

Maryland, 163 F.4th 828, 840 (4th Cir. 2026); Sandoval, 154 F.4th at 199–200; Banks, 104 F.4th at 509; United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433–34; see Sandoval, 154 F.4th at 200; Banks, 104 F.4th at 509–10. "A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." Higgs, 663 F.3d at 735 (citation and quotations omitted); see Kyles, 514 U.S. at 434; Sandoval, 154 F.4th at 200; United States v. George, 95 F.4th 200, 209 (4th Cir. 2024); United States v. Blankenship, 19 F.4th 685, 692 (4th Cir. 2021). The defendant bears the burden of proving a Brady or Giglio violation. See, e.g., United States v. King, 628 F.3d 693, 701–02 (4th Cir. 2011).

To prove a Giglio violation involving false testimony, a defendant must show that the government introduced or failed to correct trial testimony that it knew or should have known was false. See, e.g., United States v. Agurs, 427 U.S. 97, 103–04 (1976); Giglio, 405 U.S. at 154. Under Giglio, "[a] new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Elmore v. Ozmint, 661 F.3d 783, 830 (4th Cir. 2011) (citation and quotations omitted); see also Giglio, 405 U.S. at 154; Napue v. Illinois, 360 U.S. 264, 269 (1959).

The parties agree that the undisclosed evidence of Victim-2's perjury before the grand jury was favorable and suppressed. Moreover, the government states that the interest of justice requires retrial under Rule 33. Furthermore, given the strong evidentiary basis for finding that Victim-2's perjury before the grand jury was material, the court assumes without deciding that the evidence of Victim-2's perjury was material. Compare, e.g., Smith v. Cain, 565 U.S. 73, 75–76 (2012) (finding undisclosed favorable evidence material), with Turner v. United States, 582 U.S. 313,

5

327–28 (2017) (finding undisclosed favorable evidence not material), and <u>United States v. Bartko</u>, 728 F.3d 327, 337–41 (4th Cir. 2013) (same).[2]

As for defendants' arguments about the federal investigation of Weaver, defendants allege that Weaver "was under investigation by a federal Internet Crimes Against Children (ICAC) task force at the time he testified" in this case. [D.E. 151] 13. In March 2025, state officials arrested Weaver and charged him with child sex crimes. <u>See</u> [D.E. 151-3] 1. On April 17, 2025, the North Carolina State Bureau of Investigation announced the arrest on social media. <u>See</u> [D.E. 151] 13–14; [D.E. 151-3] 1. The social media post states that local, state, and federal law enforcement agencies participated in the undercover operation leading to Weaver's arrest. <u>See</u> [D.E. 151-3] 1. The arrest occurred in Scotland County, North Carolina. <u>See id.</u> Scotland County is in the Middle District of North Carolina. <u>See</u> 28 U.S.C. § 113(b). Defendants argue that the AUSAs and investigative team in this case knew or should have known of Weaver's state arrest and that a federal investigation of Weaver continued after his state arrest. <u>See</u> [D.E. 151] 15–17.

The court rejects defendants' arguments. As for the argument that a federal investigation continued after Weaver's state arrest, defendants fail to show that a federal investigation of Weaver continued after his state arrest, let alone when he testified at trial. As for the argument that the AUSAs and investigative team in this case knew about an alleged federal investigation when Weaver testified, the <u>Brady</u> obligation extends to "any favorable evidence known to the others acting on the government's behalf in the case, including the police." <u>Kyles</u>, 514 U.S. at 437; <u>Robinson</u>, 627 F.3d at 951 (citation omitted). <u>Brady</u> does not, however, "impose a duty on prosecutors to learn of any favorable evidence known by <u>any</u> government agent." <u>United States</u>

_____

[2] That there is a strong evidentiary basis for an argument about materiality does not mean that such an argument would succeed.

6

v. Taylor, 942 F.3d 205, 225 (4th Cir. 2019). Defendants fail to show that the AUSAs or anyone on the investigative team in this case knew about the investigation which led to Weaver's arrest on state charges in a different federal district or about any federal investigation when Weaver testified. See id. at 225–26 (rejecting defendants' argument that ATF agents' knowledge of a witness's federal indictment could be imputed to prosecutors working with an FBI investigative team when the ATF officers "were looking into an entirely separate case"); Robinson, 627 F.3d at 951–52; United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) ("It is unrealistic to expect federal prosecutors to know all information possessed by state officials affecting a federal case, especially when the information results from an unrelated state investigation."); cf. Kyles, 514 U.S. at 437–49; Parker, 790 F.3d at 562 & n.8 (finding a Brady violation where government witness disclosed an ongoing federal investigation into his conduct to the prosecution three days before trial). Thus, the court rejects defendants' arguments about Weaver.

As for defendants' arguments about Kucala, an FBI 302 document dated September 2, 2025, states that when Kucala interviewed Victim-1, Victim-1 "was severely withdrawing and scared to talk in fear FAULK would kill her." [D.E. 149] 2. During discovery, the government produced recordings of two interviews by Kucala of Victim-1. See [D.E. 160] 9–10. During the first interview, Kucala asked Victim-1, "Are you concerned that you're in danger or anything like that?" [G.X. 4] 9:57–59. Victim-1 responded, "If I talk anymore, probably, yeah." Id. at 10:00–03. Kucala then asked Victim-1, "Did someone threaten you, if you talked?" Id. at 10:03–11. Victim-1 responded, "Yeah, but I'm not trying to talk." Id. During the second interview, Victim-1 described various threatening statements and intimations that defendant Faulk made to Victim-1 about what would happen if she spoke to investigators. See, e.g., [D.E. 160] 9–10; [G.X. 3] 15:01–43, 43:02–44:03, 55:01–20.

Defendants have failed to demonstrate that Kucala fabricated a statement attributed to Victim-1 in an FBI 302 document dated September 2, 2025. Thus, the court rejects defendants' arguments about Kucala.

The court has considered the entire record. Defendants' arguments about Weaver and Kucala do not warrant a new trial. Nevertheless, in light of the record and the interest of justice, the court grants defendants' motions for a new trial based on Victim-2's perjury before the grand jury, and the failure to disclose the related FBI 302 statement until November 5, 2025.

### III.

As for defendants' request that the court dismiss the indictment, the court declines to impose that drastic sanction. "The dismissal of an indictment altogether clearly thwarts the public's interest in the enforcement of its criminal laws in an even more profound and lasting way than the requirement of a retrial." United States v. Derrick, 163 F.3d 799, 807 (4th Cir. 1998); see Bank of Nova Scotia v. United States, 487 U.S. 250, 254–55 (1988); United States v. Chapman, 209 F. App'x 253, 275 (4th Cir. 2006) (unpublished). A court cannot dismiss an indictment for prosecutorial misconduct if the misconduct is not prejudicial to the defendants. See, e.g., Nova Scotia, 487 U.S. at 255; Derrick, 163 F.3d at 807. And even if the court finds prejudice, a court cannot dismiss an indictment if a less severe remedy cures the prejudice to defendants. See Derrick, 163 F.3d at 809; United States v. Borokinni, 748 F.2d 236, 237 (4th Cir. 1984).

Generally, the proper remedy for a Brady or Giglio violation is vacatur of the conviction and a new trial. See, e.g., Kyles, 514 U.S. at 421–22; California v. Trombetta, 467 U.S. 479, 486–87 (1984); King, 628 F.3d at 701; United States v. Mitchell, 164 F.3d 626, at *6 (4th Cir. 1998) (per curiam) (unpublished table decision); Borokinni, 748 F.2d at 238; see also United States v. Robinson, 68 F.4th 1340, 1351 (D.C. Cir. 2023); United States v. Bolton, 908 F.3d 75, 91 (5th Cir.

8

2018); <u>United States v. Kohring</u>, 637 F.3d 895, 913 (9th Cir. 2011); <u>cf.</u> <u>United States v. Mann</u>, 140 F. Supp. 3d 513, 537–39 (E.D.N.C. 2015). The court has granted defendants' new trial motions. Moreover, the government did not act in bad faith concerning Victim-2's grand jury testimony. It made a mistake. Although the government acted negligently in failing to disclose the favorable impeachment evidence about Victim-2, the court finds that the government acted in good faith before and after discovering its error. The government timely disclosed its negligence to defendants' counsel after discovering it, admitted its mistake, and recommended a new trial. <u>See</u> [D.E. 160, 162]. A new trial will cure the prejudice. <u>See</u> <u>Derrick</u>, 163 F.3d at 809 ("[A]ny prejudice that arguably existed as a consequence of discovery violations is fully remedied by this court's orders of new trials."); <u>Borokinni</u>, 748 F.2d at 237 ("[A]ssuming [defendant] was entitled to the materials at his first trial, his remedy for the government's failure to furnish them was a new trial, not an acquittal."). Thus, the court denies defendants' request to dismiss the indictment.

IV.

In sum, the court GRANTS defendants' motions for a new trial [D.E. 151, 158] and the government's motion to seal [D.E. 163]. The court DENIES defendants' request to dismiss the indictment.

SO ORDERED. This 19 day of May, 2026.

JAMES C. DEVER III<br>
United States District Judge

9